UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HENRY CARLOS ROMERO-NOLASCO,<br><br>Petitioner,<br><br>v.<br><br>JOSEPH D. McDONALD, JR., Sherriff, Plymouth County Correctional Facility; PATRICIA H. HYDE, Acting Field Office Director, Boston Field Office, United Immigration and Customs Enforcement; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, U.S. Secretary of Homeland Security; PAMELA JO BONDI, U.S. Attorney General, *in their official capacities*,<br><br>Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 25-cv-12492-MJJ |

**MEMORANDUM OF DECISION AND ORDER**

January 14, 2025

JOUN, D.J.

Henry Carlos Romero-Nolasco ("Mr. Romero-Nolasco" or "Petitioner") petitions the Court under 28 U.S.C. § 2241 to be released from custody after an immigration judge denied his request for bond. He specifically challenges the constitutional adequacy of the bond hearing he received.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

I recount relevant facts from Mr. Romero-Nolasco's original petition as well as facts from Mr. Romero-Nolasco's bond hearing.

1

On September 7, 2025, Mr. Romero-Nolasco was arrested by Immigration and Customs Enforcement ("ICE") agents pursuant to 8 U.S.C. § 1226; he was originally detained without bond in connection with an Operating under the Influence ("OUI") arrest. [Doc. No. 8-1 at ¶ 11; Doc. No. 14-2 at 1]. On September 29, 2025, I determined that Mr. Romero-Nolasco was subject to discretionary detention under 8 U.S.C. § 1226(a) and thus eligible for a bond hearing. [Doc. No. 16]. I ordered Respondents to provide Mr. Romero-Nolasco with a bond hearing and to subsequently file a status report. [*Id.*]. In their October 7, 2025, status report, Respondents stated that an immigration judge ("IJ") denied Mr. Romero-Nolasco's request for change in custody status; Respondents also attached a copy of the IJ's Order. [Doc. No. 17 at 1].

In her Order, the IJ denied bond because she determined that Mr. Romero-Nolasco poses a flight risk "that would not be ameliorated by any conditions or bond amount." [Doc. No. 17-1 at 1]. The IJ stated that Mr. Romero-Nolasco's original application for relief was denied in part because of an OUI arrest, and that during the short window of his appeal period, he "engaged in another OUI." [*Id.*]. In sum, the IJ found that "Respondent's conduct here demonstrates by a preponderance of the evidence that he is unwilling or incapable of conforming to the laws of the United States or the state where he resides, or the order of this court, including the final removal order, should his appeal be unsuccessful, and that no bond amount or condition of release would be appropriate." [*Id.*].

Following the IJ's Order, on December 3, 2025, Mr. Romero-Nolasco filed a letter/request (non-motion), which appeared to be a renewed habeas petition. [Doc. No. 18]. Treating it as such, I directed Respondents to file a response, and they did so on January 6, 2026. [Doc. No. 20].

**II.    ANALYSIS**

2

At a custody redetermination or a bond hearing, the Government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). And with regard to the IJ, "[a]lthough an IJ may not simply ignore substantial testimonial and documentary proof, she need not discuss ad nauseum every piece of evidence." *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007)

### A. Subject Matter Jurisdiction[1]

Respondents argue that 8 U.S.C. § 1226(e) ("Section 1226(e)") prohibits judicial review of the IJ's bond determination. Section 1226(e) states that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." However, Section 1226(e) does not bar a district court from reviewing a bond denial when that denial is challenged as legally erroneous or unconstitutional. *See Massingue v. Streeter*, No. 19-cv-30159, 2020 WL 1866255 at *4 (D. Mass. Apr. 14, 2020) (finding jurisdiction based on the question of whether a petitioner received adequate due process, rather than any discretionary judgment by an IJ).

Here, Mr. Romero-Nolasco argues that he was not afforded a constitutionally adequate bond hearing because the IJ erroneously relied only on Mr. Romero-Nolasco's OUI arrest itself to determine that he is a flight risk. Where Section 1226(e) does not preclude such claims, I have jurisdiction over Mr. Romero-Nolasco's petition. *See Hechavarria v. Whitaker,* 358 F. Supp. 3d 227, 236 (W.D.N.Y. 2019) (8 U.S.C. § 1226(e) did not preclude jurisdiction because the court was not reviewing a discretionary judgment of the immigration judge but was, instead, reviewing

---

[1] For the same reasons as those stated in *Garcia v. Hyde*, No. 25-cv-585, 2025 WL 3466312 at *6–*7 (D.R.I. Dec. 3, 2025), I also find that waiver of any exhaustion requirement is appropriate.

"whether [the petitioner] received the [constitutional] due process to which he was entitled."); *see also Cepeda v. Shanahan,* 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016) (finding jurisdiction over claims of constitutional deficiency in an immigration bond hearing, including "that the government's evidence could not, as a matter of law, establish clearly and convincingly that [the petitioner] was dangerous").

### B. Standard Of Review

Even though I retain jurisdiction over Mr. Romero-Nolasco's petition, I do not have "authority to encroach upon an IJ's discretionary weighing of the evidence." *Garcia* 2025 WL 3466312 at *7 (cleaned up). Nevertheless, an IJ's decision must "comport[] with due process requirements, and to obtain habeas relief, the noncitizen must show that the IJ failed to place the burden of proof on the Government to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence." *Id*. In other words, Mr. Romero-Nolasco must show that either "the IJ erred because the evidence itself could not—as a matter of law—have supported the IJ's decision to deny bond" or "that the IJ simply did not apply the correct standard to the facts." *Id.*

### C. Constitutional Error Of Law

Here, the IJ determined Mr. Romero-Nolasco was ineligible for bond solely because he was a flight risk. As stated *supra* II, the Government bears the burden of proving "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara*, 10 F.4th at 41. Thus, the question becomes "whether the evidence that the IJ relied on at the bond hearing—could as a matter of law—establish that [Mr. Romero-Nolasco] posed a flight risk." *Id.*

The First Circuit has found that the most relevant factors of flight risk include a petitioner's "family and community ties, place of residence, length of time in the United States,

4

and record of employment." *Id*. at 40. "The success or failure of a removal defense" is also "one of several factors potentially relevant to gauging whether a person is a flight risk pending the removal decision." *Id*. at 34; *see also United States v. Colon Berrios*, 791 F.2d 211, 212 (1st Cir. 1986) (Torruella, J., dissenting) ("Among the factors relevant to the issue of possible flight are: (1) the defendant's family ties, character and mental condition; (2) the length of his residence in the community; (3) his record of appearance at court proceedings or of flight to avoid prosecution; (4) the nature and circumstances of the offense; and (5) his prior criminal record.").

In her Order, the IJ simply relied on the fact that Mr. Romero-Nolasco was charged with OUI as the basis of her denial to grant bond by stating that "Respondent's conduct here demonstrates by a preponderance of the evidence that he is unwilling or incapable of conforming to the laws of the United States or the state where he resides." [Doc. No. 17-1 at 1]. That may be true, but it does not explain how that equates to flight risk.[2] The evidence of an arrest and resulting criminal charges, by themselves, could not—as a matter of law—have supported the IJ's decision to deny bond on the ground that he is a flight risk.

### D. Remedy

Given the due process violations implicated in this case, I find that the Mr. Romero-Nolasco's immediate release is appropriate. However, Mr. Romero-Nolasco will be subject to reasonable conditions of supervision. *See Garcia*, 2025 WL 3466312 at *11.

---

[2] Petitioner argues that he has never fled from the police and that he has appeared at all court proceedings, in both his criminal as well as his immigration matters. Indeed, at arraignment for his recent OUI charge, the judge in Salem District Court set cash bail at $1,500, and a review of that court's Reasons For Ordering Bail, Continued Detention, Or Release form clearly shows that Mr. Romero-Nolasco does not have a record of failing to appear at a court proceeding. [Doc. No. 18-1 at 1]. Petitioner puts forth additional evidence that he is not a flight risk: he has been living in the United States since 2001; has four U.S. citizen children; and owns a business. As noted above, it is not this Court's place to intrude on the IJ's discretionary weighing of the evidence. However, it is clear that the IJ simply did not apply the factors relevant to assessing whether a person is a flight risk to the evidence.

### III.  CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas is <u>GRANTED</u>. Respondents are <u>ORDERED</u> to release Mr. Romero-Nolasco under reasonable conditions of supervision.

SO ORDERED.

<u>/s/ Myong J. Joun</u>
United States District Judge
